UNITED STATES *v.* MARSHALL FIELD & Co. (No. 3366) [1]

United States Court of Customs and Patent Appeals, February 3, 1931

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*James W. Bevans* for appellee.

[1] T. D. 44642.

[Oral argument December 9, 1930, by Mr. Folks and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT,. Associate Judges

BLAND, Judge, delivered the opinion of the court:

The decision of this case involves the classification of rugs imported at the port of Chicago. There were five entries and five protests,. which protests were consolidated. Appellee claimed the goods to be dutiable at 30 per centum ad valorem under the provision of paragraph 1117 of the Tariff Act of 1922 for "all other floor coverings, including mats and druggets, not specially provided for, composed wholly or in chief value of wool," rather than as classified by the collector as "rugs similar to Wilton" at 40 per centum under the same paragraph.

The Government in the court below, as here, argued that the merchandise, if not dutiable at 40 per centum as rugs "similar" to Wilton, were dutiable at 55 per centum ad valorem under paragraph 1116 of the same act under the provision "Oriental * * * and other carpets and rugs, not made on a power-driven loom." The United States Customs Court sustained the protest, and from its judgment the Government has appealed to this court.

The pertinent portions of the Tariff Act of 1922 under consideration are as follows:

PAR. 1116. *Oriental,* Axminster, Savonnerie, Aubusson, *and other carpets and rugs, not made on a power-driven loom;* carpets and rugs of oriental weave or weaves, produced on a power-driven loom; chenille Axminster carpets and rugs, whether woven as separate carpets and rugs or in rolls of any width; all the foregoing, plain or figured, *55 per centum ad valorem.* [Italics ours.]

PAR. 1117. Axminster carpets and rugs, not specially provided for; *Wilton carpets and rugs;* Brussels carpets and rugs; velvet and tapestry carpets and rugs; *and carpets and rugs of like character or description, 40 per centum ad valorem.*

*   *   *   *   .   *   *   *

*All other floor coverings, including mats and druggets, not specially provided for,* · *composed wholly or in chief value of wool, 30 per centum ad valorem.* [Italics ours.]

The rugs under consideration were made at Auerbach, Germany, and, while the record does not definitely so state, such rugs were probably never imported or known to commerce in the United States prior to the passage of the Tariff Act of 1922. They were invoiced as "Orient machine-made rugs," "Orient" being a trade name. In outward appearance they are reproductions of oriental rugs. The undisputed testimony shows that they are made in the following · manner: Colorless cotton webbing is first woven on a power loom and is made to the size of the rug to be produced. This canvaslike webbing is strong and firm in character and makes up the basis or foundation of the rug. Upon this webbing is first stenciled the design of the rug. It is then stretched in a frame and yarns of different color are looped into the webbing and cut by a patented machine.

The yarns are looped around a portion of the webbing and both cut ends on the top of the rug form the pile. The yarns are not knotted or tied in any manner and may be easily removed by pulling the loop on the bottom side of the rug. The machine has a head which looks very much like the head of a sewing machine and is so made as to be movable to different portions of the rug. In the head is the needle and cutting apparatus which inserts and cuts the wool yarns. The yarn in the machine is changed for each color required for the design. After the design has been made in the foregoing manner, the rug goes through a process of shearing, tigering, and cleaning.

The process of producing the rug at bar and that of making a hooked rug are somewhat similar, except that in producing the hooked rug the yarn continues through the whole of the weaving, whereas in the instant case the yarn is cut after it is looped by the needle in and through the webbing. It is not disputed that the webbing is produced on a power-driven loom. It is also clear that the design which is formed of the tufts is not made on a power-driven loom but by a machine as above described.

It is in evidence that the exhibit rug at bar "has the appearance of an oriental rug" and that it feels like an oriental rug. The importer's witness, who was familiar with its production, stated that it is virtually a copy or reproduction of an oriental rug.

The Government in its brief points out that, in accordance with the invoice price of a 12 by 20 rug, such a rug would retail in this country, after a 40 per centum duty was paid, at about $400.

The Government argues here, in support of the collector's classification, that the merchandise at bar is "rugs of like character or description to Wilton rugs," but it has not been of much help to this court in suggestions as to what meaning and legal effect shall be given to the phrase "like character or description." The collector did not say that the goods were of "like character or description" to Wilton rugs, but assessed them under the 40 per centum provision since they were "similar" to Wilton rugs. Congress did not use the term "similar," and we can not give to the term "of like character or description" a meaning exactly the same as "similar."

The Government also argues as an alternative that the weight of the evidence undoubtedly establishes that in "material, quality, texture and use," the merchandise resembles an oriental rug and from that contention we are led to believe that the Government seeks to apply the similitude paragraph in the classification of the instant importation. It is sufficient to say that similitude can not be resorted to in this case if the merchandise is provided for in either of the three provisions pointed out or under the general provision for manufactures of wool, or elsewhere in the act. We know that the merchandise is covered, in a general way, by the catchall provision, at a duty of

30 per centum ad valorem, and should be classified thereunder, unless more particularly described in, or dutiable under, one of the other two competing provisions, and we are, therefore, not permitted to give application to the similitude paragraph here.

A consideration of all of the rug and floor covering paragraphs in the Tariff Act of 1922 and the legislative history of the same and prior acts, would seem to compel the conclusion that it could not have been the intent of Congress that merchandise like that at bar should be classified under a provision less specific and more remote than the least specific of the floor covering paragraphs. With this thought in mind, we will, therefore, first determine whether or not the instant merchandise is provided for in paragraph 1116 or 1117.

A Wilton carpet is a cut-pile fabric and is wholly a machine-made floor covering. The warp is usually of cotton and the weft yarns of either cotton or jute. The extra warp threads to form the pile are drawn from superimposed frames of spools at the back of the loom. The spools in each frame are usually of a single color. These pile-warp threads may be either woolen or worsted yarn. See Summary of Tariff Information, 1921, page 997. The Wilton carpet is quite similar to the Brussels carpet except that the loops in the Brussels carpet are uncut, leaving an uncut pile. The Wilton carpet is made in one weaving operation and is similar to the rug at bar only in that it has a cut pile of wool, is in chief value of wool, imitates in appearance the figure of an oriental rug as do some Wiltons, and is somewhat high-priced. The difference in character and manner of construction is so marked and obvious, as is disclosed hereinbefore, as to require no particularization here. We are sure that there is sufficient difference in the two classes of rugs that it can not be said, without doing violence to the language used in the statute, that they are "of like character or description."

Next, should the imported merchandise be classified under paragraph 1116? In *United States* v. *Marshall Field & Co.*, 18 C. C. P. A. (Customs) 228, T. D. 44404, is found the following:

After the bill had passed the House and while it was pending before the Finance Committee of the Senate, the Tariff Commission supplied the Summary of Tariff Information, 1921, for the use of that committee in considering amendments which it might choose to offer to the measure.

Beginning at page 992 of this latter volume, carpets, rugs, etc., are treated. It is stated that "the term 'oriental rug' includes the hand products" of various countries; that these rugs are "usually produced in the home and with primitive appliances"; that "the foundation threads are generally of linen or hemp, and these are covered with a pile consisting of tufts of wool knotted to the warp by the weaver's fingers"; that these are fundamentally superior to the machine-made goods; that European hand-tufted rugs of which the "real" Axminster, the Savonnerie, and the Aubusson are typical, are "usually produced in workshops having improved appliances and where better materials are used than those employed in the oriental rugs," but "although the two varieties

differ in design, the details of their manufacture are essentially the same"; that a loom has been invented which produces an article similar to those of oriental weave, although "until recently it was thought impossible to develop a power loom" which would do this; that chenille Axminsters are mainly high-priced articles made on a power loom; and the following is stated relative to the paragraph which in the renumbering was changed from 1117 to 1116:

The intent of the paragraph * * * is to include *only such carpets and rugs as are distinctively luxuries.* Falling within this classification are handmade carpets and rugs, such as the Oriental, "real" Axminster, Savonnerie, and Aubusson, and also chenille Axminsters which, although made on a power loom, necessitate a large amount of handwork and are costly goods which are in much the same class as handmade goods. There is also included "carpets and rugs of Oriental weave or weaves, produced on a power-driven loom." The term "Oriental weave or weaves" means woven similar to the Oriental; that is, with knotted pile. This provision at present covers the product of only one loom, that invented by J. K. Dalkranian, but is inserted because of possible future developments in the production of knotted-pile carpets by machinery. [Italics ours.]

Oriental, Axminster, Savonnerie, and Aubusson carpets and rugs are of the handmade variety. The oriental rug ordinarily comes from the Orient. Some of the rugs mentioned in the paragraph are made in Europe, but they have the same general characteristics as those made in the Orient, chief of which is that they are made by hand. A loom is so arranged that the warp threads stand perpendicular and run parallel in front of the weaver. The warp and weft threads may be of linen, hemp, or material other than wool. The woolen yarns which are intended for the tufts to make the pile or woolen body of the rug are cut into short lengths of probably two inches; and as the weaver inserts the weft threads, by hand, the yarn is knotted, by hand, around the warp threads with the loose ends all on one side. The weft threads are, by hand, pounded close together, thus making a solid nap or pile.

When Congress prepared the paragraph it became advised of the fact that there was one machine invented which produced a cut pile carpet or rug with an oriental weave substantially similar in character to the above-described oriental rug-weaving process. See Summary of Tariff Information, 1921, page 995. This reasonably accounts for the inclusion in the paragraph of the term "carpets and rugs of oriental weave or weaves, produced on a power-driven loom." Chenille Axminster carpets and rugs are the productions of an elaborate power-loom weaving process which involves the use of "fur" or chenille which must be separately woven and torn into strips, the whole process requiring great labor which approaches the handicraft method of producing rugs and carpets.

Now, the question presents itself: What kind of merchandise did Congress intend to include by the term "and other carpets and rugs not made on a power-driven loom"? Orientals, Axminsters, Savonneries, and Aubussons were not made on power-driven looms, but all of the rugs that were in the paragraph were either made by hand—that

is, the knots were tied by hand—or else they were made by a machine which gave them substantially the handmade construction. It is not fair to assume then that Congress intended to include under the term "and other carpets and rugs not made on a power-driven loom" carpets like the ordinary domestic unknotted rag carpets which are made by hand, and other kinds of carpets and rugs having wholly different characteristics than those first mentioned in the paragraph.

The instant importation imitates an oriental rug in color and in the figure which has, by machine, been needled into the same. Outside of this similarity we can find very little, if anything, that brings the instant importation into the same class as those rugs provided for in paragraph 1116. The rug before us contains no knots except in the selvage of the web. The wool yarns used to make the pile are sometimes looped around the weft threads and sometimes around the warp threads of the base fabric, and at times they are looped around portions of both weft and warp threads. They are not tied and are easily removed from the fabric and in our judgment have none of the durable and desirable qualities in this regard as characterize the tufts or pile yarns in the rugs provided for in paragraph 1116. We do not think that the term "Oriental, Axminster, Savonnerie, Aubusson, and other carpets and rugs not made on a power-driven loom" was meant to include a rug so dissimilar to the rugs named as is the merchandise at bar. One of the characteristics of the rug at bar which strongly influences us in this conclusion is the fact that the basic part of the instant importation *is made* on a power-driven loom.

We think it follows that the merchandise is dutiable in the catchall floor covering provision, as claimed by the importer and as found by the court below.

It is argued by the Government that, manifestly, Congress could not have intended that merchandise such as this excellent reproduction of an oriental rug, and which sells at a high price, be classified along with rag rugs made of discarded woolen clothing, and other cheap and inexpensive floor coverings, mats and druggets, and further argues that since tariff acts are made for the future, Congress, by the use of the two quoted terms in paragraphs 1116 and 1117 meant them to be in the nature of catchall provisions to take care of future improvements in rugs made by improved machinery not then in existence.

We recognize that our conclusion brings about the anomaly to which the Government adverts, but this is frequently true where articles are not described in certain, definite, specific tariff provisions and are, of necessity, relegated to catchall provisions. Catchall provisions are ordinarily placed in tariff schedules for the purpose of seeing to it that the merchandise is not forced to find classification in less specific and more unrelated provisions. In the case at bar, the 30 per centum catchall provision requires that the merchandise find

classification as woolen floor coverings rather than in a manufactured article paragraph which is more general in character.

It is true that tariff laws are made for the future and that goods not known to commerce on the date the act was passed may find classification within a certain paragraph, if therein described. But, if the language employed is not such as to bring the merchandise within the paragraph, the courts can not supply what Congress failed to do. Catchall provisions are meant to, at least in part, take care of this kind of contingency. When the attention of the legislative branch is called to the importation of such merchandise as is at bar, it may or may not, in future legislation, more specifically and definitely describe it.

The judgment of the United States Customs Court is *affirmed.*